UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IVIE WHITE,                          ]
                                     ]
          Plaintiff,                 ]
                                     ]
vs.                                  ]
                                     ]      CV 97-N-2852-W
DELCHAMPS, INC.,                     ]
                                     ]
          Defendant.                 ]

APR 15 1999

## Memorandum of Opinion

### I.    Introduction.

In this employment discrimination action the plaintiff, Ivie White, brings suit against her former employer, Delchamps, Inc. ("Delchamps") for violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Specifically, White claims that she was terminated because of her age and replaced by a younger woman.

This matter is presently before the court on the defendant's motion for summary judgment, filed February 16, 1999. The issues have been briefed by both parties, and the motion is now ripe for decision. Upon due consideration, the motion will be denied.

### II.   Statement of Facts.[1]

The parties agree on the following basic sequence of events.  On or about October 3, 1988, plaintiff began her employment as a cashier with Delchamps.  At the time she was hired, Ms. White was forty-four years old.  Since that time she has worked as a checker at

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

two Delchamps stores. Both stores were managed by Richard Sykes. On October 18, 1996, White and Sykes became involved in an altercation, apparently centering around the plaintiff's shift assignments. The next day when the plaintiff returned to work for her shift, Sykes informed her that she was being suspended while the incident of the day before was investigated by Delchamps's personnel review board. The plaintiff was asked to leave the store, and police were called to ensure that she did. On October 26, 1996, the review committee determined that Ms. White should be terminated for violation of company policy.

While the parties agree on the broad outlines of this story, the details are hotly disputed. The defendant's version of the story portrays Ms. White as a poor employee who was disciplined for failing to carry out her job tasks efficiently and ultimately discharged for yelling at her manager in front of co-workers and customers. The defendant alleges that White told Sykes "I hope you have a child that's dying," and later shouted "you are so rotten you stink."[2] When asked the next day to leave the store quietly, White allegedly refused and threatened Sykes with litigation. She left only after the police were summoned to escort her

---

[2] This version of the story is backed by Sykes's incident report, as well as copies of unsworn statements signed by Delchamps employees. Plaintiff has moved to strike this evidence as inadmissible hearsay. The court suspects that this evidence is admissible for at least the limited purpose of showing the grounds upon which the Delchamps personnel review committee acted. However, without deciding the question of the admissibility of this evidence at trial, the court will deny the motion to strike at this point. The court simply notes that the evidence is not determinative of the issues on summary judgment. The court cannot at this point determine what happened on October 18. Whether the defendant's version of events is backed by one employee or a thousand, Ms. White's conflicting testimony is sufficient to create a factual question which must, if material, be answered by a jury. By the same token, however, the defendant does not need this evidence to carry its burden of coming forward with a legitimate nondiscriminatory reason for its actions. Ms. White does not seriously dispute that her altercation with Sykes formed the basis of the review committee's actions. Whatever the available evidence, defendant's proffer shifts the burden back to the plaintiff to prove that age played a role in the decision to terminate her. Once again, it is the quality of the evidence available to the plaintiff, and not that proffered by the defendant, which largely determines the fate of the summary judgment motion. The challenged evidence does not substantially affect this analysis, and indeed to the extent it is relevant seems to benefit the plaintiff. *See infra* at 13. The court therefore sees no reason to discard it at this point.

2

from the premises. According to Delchamps, it is because of these outbursts that the plaintiff was terminated.

Not surprisingly, the plaintiff tells a substantially different story. She paints Sykes as the villain. According to White, Sykes disliked her because she was much older than the other cashiers in the store, treated her differently, and indicated a number of times that she was too old to be able to do her job effectively. Adding insult to injury, he allegedly went back on a promise to arrange her shifts so that she could take on a second job to provide financial support for a sick grandchild. White admits that she was "very upset" when she discovered that he had assigned her a shift conflicting with her new job. However, what she said to him was "I hope you *never* have a child that's dying." *Plaintiff's Exh. A, Aff. of Ivie White* ¶ 17 (emphasis added). White denies that she told Sykes he was "rotten," *Id.* ¶ 18, or that she ever refused to leave the store when asked to do so. *Id.* at 21. She also suggests that at least some of their dispute was not witnessed by customers, as the defendant claims, since she saw no customers in the store at that point.

## III.   Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

3

if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Where the nonmoving party will bear the burden of proof at trial, there is no requirement, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. "Instead, the moving party simply may '"show[ ]"'--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc*) (quoting *Celotex*, 477 U.S. at 324); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (same); *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must instead make an "affirmative showing" that crucial evidence is missing "by reference to any combination of the following: pleadings; deposition testimony of a party or its witnesses; affidavits; responses to interrogatories . . . ; requests for admission . . . ; and any other exchanges between the parties that are in the record." *Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.).

"Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show

4

that a genuine issue remains for trial." *Four Parcels of Real Property*, 941 F.2d at 1437-38 (11th Cir.1991).

At this stage, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* at 324. The nonmoving party must make a specific, affirmative showing that a genuine factual dispute exists. If the required showing is not made, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

After the plaintiff has responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard

5

necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.    The Adea and the Mcdonnell Douglas Framework.

Plaintiff has alleged that the events described above constitute a violation of the Age Discrimination in Employment Act.  The Act states in pertinent part:

6

(a) Employer practices. It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623. A plaintiff may establish a prima facie ADEA case in one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by meeting the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) by demonstrating through statistics a pattern of discrimination. *See Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997). "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of discrimination." *Id.* at 582. In the present case, White has presented no direct or statistical evidence of discrimination by the defendant. Therefore, she must establish a prima facie case of discrimination, if at all, through circumstantial evidence.

Under the *McDonnell Douglas* framework, a plaintiff seeking to establish a claim based on circumstantial evidence has the burden of establishing a prima facie case of discrimination. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring the defendant to articulate some "legitimate, nondiscriminatory reason" for the allegedly discriminatory employment action. *Id.* "[I]t is possible for the

7

defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original).

The plaintiff may prove that the defendant intentionally discriminated against him "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). However, "'to withstand a defendant's motion for summary judgment, a plaintiff has to do more than establish a prima facie case and deny the credibility of defendant's witnesses.'" *Howard v. BP Oil Co.*, 32 F.3d 520 (11th Cir. 1994) (quoting *Brown*, 939 F.2d at 950).

8

"Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). Plaintiff must instead "produc[e] sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable."[3] *Howard*, 32 F.3d at 526.

If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997). Because of the difficult factual questions involved in assessing "an employer's true motivations," once the plaintiff has presented evidence raising a question about those motivations summary judgment is ordinarily inappropriate. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If evidence in the record "demonstrate[s] 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's preferred legitimate reasons for its action that a legitimate factfinder could find them unworthy of credence,'" the final assessment of the employer's motivation must be left to the jury. *Combs*, 106 F.3d at 1538.

---

[3] In other words, a defendant can carry its initial burden on summary judgment on the pretext issue by presenting extensive proof to support its legitimate nondiscriminatory reason. If the defendant can show that its preferred reason was the real reason, it need not prove a negative by showing that the plaintiff cannot prove pretext. Pretext and a legitimate reason are, after all, two sides of the same coin. Proof of one disproves the other.

## V.    Discussion.

Plaintiff makes two related claims of age discrimination, alleging that the defendant discriminated against her by assigning her a shift conflicting with her second job and by terminating her after the resulting conflict with Sykes. The court will discuss the latter claim first.

### A.    Discriminatory Termination.

In order to make out a prima facie discriminatory termination case under the ADEA, the plaintiff must show that she (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual. *See Benson v. Tocco*, 113 F.3d 1203, 1207-08 (11th Cir. 1997); *see also Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir. 1984) (setting out the same requirement for an analogous Title VII prima facie case). Delchamps seriously contests only the fourth prong of this test. According to the defendant, the plaintiff's claims of age discrimination "fail as a matter of law" because "'[n]o individual was specifically hired to replace plaintiff following her termination. Delchamps maintains a policy of periodically hiring a certain number of persons to maintain a complete payroll to compensate for normal attrition rates.'" *Movant's Initial Submission in Response to Exhibit D of the Court's Order*, at 9 (quoting *Defendant's Exhibit D* ¶ 4).

Defendant's argument proves too much. Under this logic, Delchamps employees could *never* state a prima facie case of discrimination under many of the usual *McDonnell Douglas* formulations because the class status of the person hired for the position at issue could never be ascertained. Accepting the defendant's argument would thus turn prima

10

facie case requirements which the Supreme Court has described as "minimal," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993), and "not onerous," *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981), into major roadblocks for discrimination plaintiffs. Recognizing this problem, the Eleventh Circuit has noted that "when . . . there are a number of openings," for the position in question, "it is often impossible to determine which successful applicant for the position got the 'plaintiff's' berth for purposes of comparing class status. In such a situation, it is sufficient to identify any successful applicant for the position." *Walker v. Mortham*, 158 F.3d 1177, 1186 n.19 (11th Cir. 1998). While the *Walker* court's observation related to a Title VII hiring/promotion prima facie case, the problem posed here is identical as both situations require that a plaintiff show that the defendant "'filled the positions with [persons outside the plaintiff's protected class].'" *See id.* (citations omitted) (alteration in original); *see also Benson*, 113 F.3d at 1207-08. Thus the court concludes that the plaintiff can state a prima facie case by showing that any of the group of employees hired immediately after her termination were substantially younger than she was. There is some evidence in the record to suggest that this was, in fact, the case, precluding summary judgment on this issue. *See Plaintiff's Exh. D, Decl. of Ranquel Smith*; *Plaintiff's Exh. C, Decl. of Jarvis McKinney*; *Respondent's Additional Undisputed Facts* No. 54 (admitted by defendant). The court therefore concludes that plaintiff's prima facie case is sufficient to withstand summary judgment.

Delchamps also attacks plaintiff's proof of pretext and intentional discrimination. Defendant argues that the final termination decision was made by a neutral review board in Mobile, Alabama, hundreds of miles from the events in question. Defendant points out

that the plaintiff has offered no evidence to suggest that these decisionmakers were influenced by age bias in any way.

The court agrees that the record contains no substantial evidence of bias on the part of the review board. The court also recognizes that, whatever may or may not have happened during the conflict between the plaintiff and Sykes, the board may well have had ample evidence before it to justify the decision it reached.[4] "The law is clear that, even if a Title VII claimant did not in fact commit the violation with which [s]he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation." *Jones v. Gerwen*, 874 F.2d 1534, 1540 (11th Cir. 1989). The plaintiff has not presented the court with any evidence which calls into doubt the review board's honesty in assessing the situation. Thus, if the board acted alone in its imposition of discipline, the court would readily conclude that no claim could be stated against the defendant.[5]

---

[4] The incident report and employee statements which were apparently before the board indicate fairly serious misbehavior on the part of the plaintiff. *See supra* note 2 and accompanying text. The court further notes that even the plaintiff's version of events suggests that she may have engaged in heated exchanges with Sykes in the presence of co-employees and even customers. This might of itself be sufficient grounds for termination.

[5] Plaintiff seems to suggest that Mr. Sykes's derogatory statements regarding the plaintiff's age might be evidence that the review board's decision was marred by a similar bias. The court recognizes that evidence of discriminatory bias on the part of members of the defendant's management might in some cases be circumstantial evidence of discriminatory intent even if the remarks did not come directly from the decisionmakers themselves. However, such evidence is truly probative only if it establishes an atmosphere of discrimination or otherwise suggests that the actual decisionmakers may have been infected by the same thought processes. *See, e.g., Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998) (noting that other courts have found such comments relevant "evidence of the atmosphere in which the employment decision was carried out"). In this case, however, there is no evidence to suggest a link between Mr. Sykes's attitude and that of a review committee hundreds of miles away. Thus, when "read in conjunction with the entire record" as it now exists, the court cannot conclude that these statements "might lead a reasonable jury to disbelieve" the board's alleged basis for its decision. *Id.*

However, this conclusion does not end the court's inquiry, as the evidence suggests that another decisionmaker was involved in the discipline process.  The manager Sykes filed reports with personnel setting out the details of his confrontations with the plaintiff, and indicating that she was "suspended until further investigation by the review board." *Defendant's Exh. A* at WHI00013-14.  These reports are accompanied by apparently contemporaneous statements by co-employees regarding the incident. *Id.* at WHI00015-21.  In the court's view a reasonable jury could infer from this evidence that Sykes himself initiated the process which ultimately led to Ms. White's termination, and perhaps played a role in collecting the statements relied upon in that decision.  If Sykes's actions were motivated by prohibited discrimination, the fact that the resulting final decision was made by a neutral decisionmaker will not spare Delchamps from liability.  "Disparate treatment analysis requires that none of the participants in the decision-making process be influenced by racial bias." *Jones v. Gerwen*, 874 F.2d 1534, 1542 n.13 (11th Cir. 1989) (indicating that the relevant decisionmakers include the final disciplinary decisionmaker and the supervisor initiating the disciplinary process); *see also Naia v. Deal*, 1998 WL 42719, at *12 (S.D. Ga.) (concluding that a supervisor's recommendation that a subordinate be disciplined, which led ultimately to a two week suspension, itself constituted an adverse employment action).  Because the evidence at this point indicates that Sykes's report (or reports) were relied on in the decision to proceed against Ms. White, his influence on the decision is a factual question left for trial.[6]

---

[6]The court will, however, issue a *caveat* to clarify the issues for trial.  The evidence of discrimination outlined below is probative only to the extent that Mr. Sykes initiated or influenced the disciplinary decision.  If the evidence at trial indicates that he did not play a role in this decision, then at least on the evidence before it

13

In the court's view, the record also contains sufficient evidence to raise a jury question regarding Sykes's motivations. The discrepancies between his version of what happened on October 18 and Ms. White's raise a factual question about whether Sykes told the truth about the incident in the first place. If a jury found that he lied about the incident, it could reasonably infer that he did so for improper reasons. Added to this are Ms. White's generalized allegations of disparate treatment, her claim that Sykes intentionally arranged her shift assignments to foreclose a second job he had previously approved, and her testimony that he made derogatory comments about her age and work performance. All of this is more than sufficient to allow a jury to conclude that Sykes was driven by something more than a pure motive to discipline a store policy violation. Under Eleventh Circuit precedent, that in turn is enough to allow a jury to presume that Sykes's real motive in taking action against the plaintiff was her age, *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997), even without the added evidence of his discriminatory comments.

The court therefore concludes that material issues of fact regarding plaintiff's discriminatory termination claim remain for trial. Summary judgment will therefore be denied as to this claim.

## B.     Discrimination in Shift Assignments.

As the court understands it, plaintiff's claim of discrimination in shift assignments is based on her allegation that Sykes intentionally arranged her schedule to conflict with a second job he had given her permission to accept. While the court has some questions

---

today the court would be inclined to conclude that the plaintiff could not make out a valid claim against the defendant. *See supra* note 5 and accompanying text.

14

about the legal adequacy of such a claim, neither party has effectively briefed the issues. Indeed, Ms. White's brief does not seem to address this claim at all, while Delchamps argues essentially that "[p]laintiff has simply failed to carry the burdens imposed by applicable substantive and procedural law." *Movant's Initial Submission in Response to Exhibit D of the Court's Order*, at 12. The court would agree, except that at this point the burden is not plaintiff's to bear. Instead, the initial burden falls on the defendant to make an "affirmative showing" that evidence on some critical element of the plaintiff's case is missing. *See Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.). Defendant has not even established what the elements of such a claim would be, much less affirmatively pointed out which ones cannot be proven. "[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). This is all the defendant has done. Summary judgment will therefore be denied as to this claim as well.

## VI.   Conclusion.

Accordingly, the defendant's motion for summary judgment will be denied. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 13th of April, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE